UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONNA LATHROP, Suing individually and as the mother and next friend of her minor son, OSBORNE ALONZO TATE, JR. | : : : : : | |
| VS. | : : | NO. 3:02CV1473(AWT) |
| J. E. HOWELL, Officer DALTON, Sergeant EPPS and Lieutenant MINARDI | : : : : | JANUARY 21, 2006 |

**PLAINTIFF'S TRIAL MEMORANDUM**

**(1)    TRIAL COUNSEL**

    John R. Williams
    51 Elm Street
    New Haven, CT 06510
    203.562.9931
    Fax: 203.776.9494
    E-Mail: jrw@johnrwilliams.com

**(2)    JURISDICTION**

The basis for the court's subject matter jurisdiction is Sections 1331, 1343(3) and

1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States Code.

**(3)    JURY-NONJURY**

    This is a jury case.

**(4) NATURE OF CASE**

This is an action brought pursuant to 42 U.S.C. § 1983 and Connecticut law against New Haven police officers. The action alleges false arrest, unreasonable force and malicious prosecution, all in violation of the Fourth Amendment. It also alleges the intentional infliction of emotional distress in violation of state law.

**(5) STIPULATIONS OF FACT AND LAW**

1. At all applicable times, the defendants were officers in the Police Department of New Haven, Connecticut, acting in their official capacities and under color of law.

**(6) PLAINTIFF'S CONTENTIONS**

Osborne Alonzo Tate, Jr., was born on October 2, 1987. He is now an adult but brought this action through his mother when he was a minor. Donna Lathrop, Mr. Tate's mother, also seeks damages in her own right. The defendants were at all relevant times New Haven police officers.

At approximately one o'clock in the afternoon on September 19, 2001, the plaintiff's son and his friends were playing in the vicinity of the plaintiff's home when suddenly they were confronted by the defendants, who pointed guns at them, ordered the plaintiff's son to the ground at gunpoint, and arrested him, transporting him in handcuffs and against his and the plaintiff's will to a Juvenile Detention Center in downtown New Haven. The plaintiff arrived on the scene as these events were taking place and protested her son's innocence, but in response to her protestations the

defendants threatened to arrest her, also.  The defendants thereafter falsely charged the plaintiff's son with being a juvenile delinquent by virtue of what they called "intimidation" and caused him to be forced to appear as an accused juvenile delinquent before the Superior Court for Juvenile Matters at New Haven where, on November 1, 2001, the said false charge was dismissed by a Judge of that court.  As a result, the plaintiff was forced to hire lawyers to defend her son, to her economic loss.   As a further result, the plaintiff's son suffered the loss of his liberty.  As a further result, both the plaintiff and her son suffered severe emotional distress.

In the manner described above, the defendants made an unreasonable arrest and used unreasonable force while making the arrest, in violation of the rights secured to Osborne Alonzo Tate, Jr., by the Fourth Amendment to the United States Constitution.  In the manner described above, the defendants maliciously prosecuted Osborne Alonzo Tate, Jr., for offenses they knew he had not committed, in violation of the Fourth Amendment to the United States Constitution.  In the manner described above, the defendants engaged in conduct which was extreme and outrageous and which they knew or should have known would cause both the plaintiff and her son to suffer emotional distress.  In the manner described above, the defendants were negligent in that they engaged in unreasonable conduct which they should have known was likely to cause both the plaintiff and her son to suffer emotional distress sufficiently severe to require medical attention.  The conduct of the defendants was shocking to the conscience and deprived both the plaintiff and her son of their right to substantive due

process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

**(7)   DEFENDANTS' CONTENTIONS**

Defendants deny violating any of the plaintiffs' rights and assert the affirmative defense of qualified immunity, the affirmative defense of commonlaw immunity to the claims under state law, the affirmative defense that the plaintiffs' injuries were caused by their own negligence, and the affirmative defense of lack of subject matter jurisdiction.

**(8)   LEGAL ISSUES**

1. Is any of the defendants protected by qualified immunity?
2. Is any of the defendants protected by commonlaw immunity?
3. Does this court lack subject matter jurisdiction of any one or more of the plaintiffs' claims?

**(9)   VOIR DIRE QUESTIONS**

1. This is a lawsuit for civil rights violations brought by a citizen and her son against police officers.  Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen to serve on the jury?

2. Is there anyone here who would prefer not to sit on a jury concerning a case of this kind?

3. Does anyone here feel for any reason that citizens who believe that they have been treated illegally and unfairly should not bring suit against police officers? If so, please explain.

4. Have you or anyone close to you ever been employed as a policeman or by any law enforcement agency in any capacity? If so, please explain.

5. Have you or anyone close to you ever been employed by any municipality in the State of Connecticut?

6. Has anyone here or anyone close to you ever been employed by any other Governmental unit in the State of Connecticut or elsewhere?

7. Do you know or have you read anything or heard anything about this case, the plaintiff or the defendants or any of the lawyers involved in the case?

8. Has anyone here ever served as an appointed or elected official of state, city or local Government?

9. Has anyone here or anyone close to you ever been involved in any political campaigns or elections in the State of Connecticut?

10. Has anyone here or any close to you ever been employed by an attorney?

11. Would you for any reason tend to favor one side or the other in this case or in regard to the evidence which may be presented?

12. Other things being equal, would you tend to trust or believe the testimony of a police officer more or less than that of an ordinary citizen merely because the testimony came from a police officer?

13. Does anyone here have any feeling that the testimony of a police officer is entitled to greater or lesser weight or believability than that of a civilian?

14. Have you or anyone close to you ever been the victim of a crime?

15. Does anyone here belong to any club or organization which in any way is interested in the enforcement or the change of any law or laws or which is in any other way concerned with policemen or law enforcement?

16. Have you or anyone close to you ever been arrested?

17. Has anyone here ever witnessed an arrest?

18. Have you, or has anyone close to you, ever been a party to a lawsuit? If so, please explain.

19. Where are you employed?

20. If you are married, is your spouse connected in any way with any police department or other law enforcement agency or is he or she employed by any municipality?

**(10) LIST OF WITNESSES**

1. The plaintiff Donna Lathrop will testify concerning all allegations in the case.

2. The plaintiff Osborne Alonzo Tate, Jr., will testify concerning all allegations in the case.

3. Defendant Howell will testify concerning his actions.

4. Defendant Dalton will testify concerning his actions.

   5. Defendant Epps will testify concerning his actions.

   6. Defendant Minardi will testify concerning his actions.

   7. Attorney Katrena Engstrom will testify concerning the disposition of the underlying Juvenile case.

   8. Judge Gerard Esposito will testify concerning the disposition of the underlying Juvenile case.

   9. Plaintiff Tate's younger brother will testify concerning the actions of the defendants.

**(11)   EXHIBITS**

   1   Juvenile Summons and Complaint

**(12)   DEPOSITION TESTIMONY**

   None.

**(13)   REQUESTS FOR JURY INSTRUCTIONS**

   1. The plaintiffs have brought this lawsuit to obtain redress for what they contend were violations of their rights under the United States Constitution, specifically their right to be free from false arrest, malicious prosecution and unreasonable force. Federal law provides that any individual may seek redress in this Court, by way of money damages, against any person or persons who, under color of State law, deprive that individual of any of his constitutional rights.  "Acting under color of law" means

"under pretense of law," and simply means acting in one's capacity as, in this case, police officers. In this case, the plaintiffs have met their burden of proving that the defendants acted under color of law, so you need not concern yourselves with that issue. [Monroe v. Pape, 365 U.S. 167 (1961); Pitchell v. Callan, 13 F.3d 545 (2d Cir. 1994); Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994); Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975).]

    2. It is not necessary to find that any defendant had any specific intent to deprive the plaintiffs of their civil rights in order to find in favor of the plaintiffs. The plaintiffs are entitled to relief if the defendants, or any of them, intended the actions which resulted in the violation of the plaintiffs' rights or if any defendant acted in reckless disregard of the plaintiffs' rights. Reckless disregard of a plaintiff's rights simply means not caring whether or not those rights were being violated. [Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989); Bordanaro v. McLeod, 871 F.2d 1151, 1164 (1st Cir. 1989); Stengel v. Belcher, 522 F.2d 438 (6th Cir. 1975); Gregory v. City of Rogers, 921 F.2d 750, 755-57 (8th Cir. 1990) (Timbers, J.); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989); Caballero v. City of Concord, 956 F.2d 204 (9th Cir. 1992); Presnick v. Santoro, 832 F. Supp. 521, 528 (D. Conn. 1993) (Cabranes, J.).]

    3. The testimony of a police officer is entitled to no special or exclusive sanctity. An officer who takes the witness stand subjects his testimony to the same examination and the same tests that any other witness does and in the case of police officers you should not believe them merely because they are so employed. You should recall their

demeanor on the stand, their manner of testifying, the substance of their testimony, and weigh and balance it just as carefully as you would the testimony of any other witness. People employed by the government, including police officers, do not stand in any higher station in the community than other persons, and their testimony is not entitled to any greater weight. [Wright & Havanich, CONN. JURY INSTRUCTIONS, (2d Ed.) §667.]

  4. If you find that any defendant is liable to either or both of the plaintiffs on any of the grounds advanced in this lawsuit, you should then consider the question of damages.  There are essentially two kinds of damages which can be awarded in a lawsuit -- compensatory damages and punitive damages.  Compensatory damages are designed to compensate the plaintiff for injuries suffered by the plaintiff.  These injuries include money actually spent or debts incurred as a result of the injury, as well as emotional anguish, impairment of reputation, personal humiliation, and other suffering. In fixing compensatory damages you should determine the amount of money which will, in your judgment, reasonably and fairly compensate the plaintiff for any harm of any kind which was proximately caused by the wrongful conduct of the defendant.  Among the elements of injury and harm for which compensation may be awarded are:

  a) The physical harm to the plaintiff during and after the impairment or injury received, including imprisonment and loss of freedom;

  b) The emotional harm to the plaintiff during and after the impairment or injury received, including emotional distress or pain, humiliation, personal indignity,

embarrassment, fear, anxiety and/or anguish which the plaintiff has suffered or may with reasonable certainty be expected to suffer in the future;

    c) Lost wages or earnings;

    d) Attorney fees or other expenses and costs of legal representation;

    e) Medical bills or expenses.

Actual loss is not limited to expenses or debts incurred.  Injuries of any kind are to be fully and fairly compensated if they are proximately caused by the constitutional violation.  You should award damages in such a case to the extent that the loss or injury can be reasonably quantifiable and not simply on the basis of the inherent value of the rights violated.  The damages you award should be proportional to the actual loss sustained, whether that loss is physical or mental or emotional or one of the other types of loss I have previously discussed with you.  [Memphis Community School District v. Stachura, 477 U.S. 299 (1986); Wheatley v. Beetar, 637 F.2d 863, 865-68 (2d Cir. 1981); Ellis v. Blum, 643 F.2d 68, 82-84 (2d Cir. 1981); Walters v. City of Atlanta, 803 F.2d 1135 (11th Cir. 1986); Johnson v. Franklin, 112 Conn. 228, 229, 152 Atl. 64 (1930); Childs v. Bainer, 35 Conn. App. 301, 304 (1994); Creem v. Cicero, 12 Conn. App. 607, 611, 533 A.2d 234 (1987); Jeffries v. Johnson, 27 Conn. App. 471, 476, 607 A.2d 443 (1992).]

    5. You may also decide whether either plaintiff is entitled to the award of any punitive damages.  In a case like this one, you may consider whether acts or omissions of any defendant, if you find them to have been proved, were so serious that the

defendant should pay a penalty so that in the future others will be deterred from engaging in the same conduct.  Whether you decide to award any punitive damages should be based on whether you find that the defendant engaged in any one of the following things:

    1)  Willful or malicious violation of the constitutional rights of the plaintiff;

    2)  Any intentional act by the defendant in gross disregard of the rights of the plaintiff;

    3)  Reckless disregard by the defendant of whether or not he was violating the rights of the plaintiff.

If you find any one of these three things to have been proven, then you should award punitive damages.  [Smith v. Wade, 461 U.S. 30 (1983); Stolberg v. Board of Trustees, 474 F.2d 489 (2d Cir. 1973); McFadden v. Sanchez, 710 F.2d 907 (2d Cir. 1983); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989); Larez v. City of Los Angeles, 946 F.2d 630, 648-49 (9th Cir. 1991); Wright v. Sheppard, 919 F.2d 665, 670-73 (11th Cir. 1990).]

    6.  The purpose of punitive damages awards is both punishment and deterrence, and in deciding whether to award punitive damages and, if so, fixing the amount of such damages, the jury acts as the conscience of the community.  In fixing the amount of punitive damages, it is appropriate for the jury to consider all of the same factors which a trial judge would consider in imposing sentence in a criminal case. These factors include the behavior of the defendant at trial and his or her apparent lack

of genuine repentance for the misconduct in question, if you find such to be the case. [Hall v. Ochs, 817 F.2d 920 (1st Cir. 1987); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir. 1987); O'Neill v. Krzeminski, 839 F.2d 9 (2d Cir. 1988); Zarcone v. Perry, 572 F.2d 52 (2d Cir. 1978).]

    7. Police officers have an affirmative duty to enforce the law and preserve the peace. This includes stopping other police officers from violating the law. A police officer may not ignore the duty imposed by his office and fail to stop other officers who illegally arrest or search a third person in his presence. Thus, if you find that any police officer, whether or not named as a defendant, violated any of the civil rights of the plaintiff, and that the defendant did nothing to prevent it, although in a position to do so, then the defendant himself is liable for that unlawful act. [Gagnon v. Ball, 696 F.2d 17 (2d Cir. 1982); Zapico v. Bucyrus-Erie Co., 579 F.2d 714, 718 (2d Cir. 1978); Bruner v. Dunaway, 684 F.2d 422 (6th Cir 1982); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972).]

    8. When two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or performing it under circumstances which fairly charge them with intending the consequences which follow, they incur a joint and several liability for the acts of each and all of the joint participants. The law does not require the injured party to establish how much of the injury was done by one person and how much of the injury was done by another. Rather, it permits the injured party to treat all concerned in the injury jointly and all are liable to respond to the plaintiff in a total sum as damages. All those who actively participate in a wrongful act, by

cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts for their benefit, are equally liable with him.  Express agreement is not necessary, and all that is required is that there should be a common design or understanding, even though it be a tacit one.  [Prosser, Law of Torts, Section 46, pp. 291-95 (4th Ed. 1971); Gagnon v. Ball, 696 F.2d 17 (2d Cir. 1982).]

      9. Conduct of a defendant, including statements knowingly made and acts knowingly done after an allegedly wrongful act, may be considered by the jury in the light of all other evidence in the case in determining whether or not the defendant has acted wrongfully.  When a defendant voluntarily and intentionally offers an explanation, or makes some statement tending to show his innocence, and this explanation or statement is later shown to be false, the jury may consider whether this circumstantial evidence points to a consciousness of wrongdoing.  Ordinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence.  Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of wrongdoing or a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury.  A statement or act is "knowingly" done, it made or done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.   [Fernandez v. Fitzgerald, 711 F.2d 485 (2d Cir. 1983); United States v. McDougald, 650 F.2d 532 (4th Cir. 1982); Government of Virgin Islands v. Testamark, 570 F.2d 1162 (3d Cir 1978); United States v. Barresi,

13

601 F.2d 193 (5th Cir. 1979); <u>United States v. Wood</u>, 550 F.2d 435 (9th Cir. 1976); <u>Opper v. United States</u>, 348 U.S. 84, 92 (1954); <u>Wilson v. United States</u>, 162 U.S. 613, 620-21 (1896); <u>United States v. DeAlesandro</u>, 361 F.2d 694, 697-98 (2d Cir. 1966), <u>cert</u>. <u>denied</u>, 385 U.S. 842 (1967).]

     10. If you find that a defendant not only made a false statement or explanation tending to show his innocence, but has made that statement to a law enforcement officer, then you may consider that to be evidence not only of the defendant's consciousness of his own wrongdoing but independent evidence that in fact he did violate the plaintiff' rights in the manner alleged in the Complaint. False exculpatory statements made to law enforcement officials are circumstantial evidence and have independent probative force. In other words, if you find that a defendant has knowingly made a false statement to a law enforcement officer, which if true would have tended to establish the innocence of the defendant, you may consider that false statement as independent evidence that the defendant actually committed the constitutional violation alleged in the Complaint. [<u>United States v. Durrani</u>, 835 F.2d 410, 424 (2d Cir. 1987).]

     11. A person, even if he or she is being lawfully arrested, has a constitutional right to have that arrest made in a reasonable manner. A police officer is not allowed to behave unreasonably when making even a lawful arrest. The officer may take only such steps and use only such force as a reasonable and trained police officer would believe is required to take an arrested citizen into custody, for the particular charges and under the particular circumstances presented by this case. A police officer may do

no more than that.  In determining whether a defendant police officer has acted unreasonably in the course of making an otherwise lawful arrest, you should consider all of the facts which you find to have been proven in the case, including the need if any for using the amount of force that was used and the relationship between that force and the extent of the injury which was inflicted upon the plaintiff by the officers.  [Graham v. Connor, 490 U.S. 386 (1989); Miller v. Lovett, 879 F.2d 1066 (2d Cir. 1989); Finnegan v. Fountain, 915 F.2d 817 (2d Cir. 1990).]

      12.  A police officer may not arrest a person without an arrest warrant unless he has probable cause to believe that a crime has been committed and that the person in question has committed that crime.  Probable cause exists if the facts and circumstances known to the defendant, or of which he had reasonably trustworthy information, are sufficient to warrant a prudent police officer in believing that the suspect has committed a crime.  The hunch, guess, conjecture or surmise of an officer is not enough, and there must be enough actual evidence to lead reasonably to the conclusion that the suspect has committed a crime.  Thus, if you find that the defendants arrested the plaintiff without probable cause, you must find the defendants liable for a violation of the plaintiff's constitutional rights.  [Dunaway v. New York, 442 US. 200 (1979); Brown v. Texas, 443 U.S. 47 (1979); Henry v. United States, 361 U.S. 98 (1959); Brinegar v. United States, 338 U.S. 160, 175-76 (1949); Thamel v. Town of East Hartford, 373 F.Supp. 455 (D.Conn. 1974) (Newman, J.).]

13.  If a police officer files a false report and that report results in the prosecution of an individual, then the officer violated the constitutional right of the person reported on.  Therefore, if you find that any defendant here made a material false statement in an arrest report, and the report caused the prosecution of the plaintiff, then the defendant is liable to the plaintiff.  [Franks v. Delaware, 438 U.S. 154 (1978); Stadium Films v. Baillargeon, 542 F.2d 577 (1st Cir. 1976); White v. Frank, 855 F.2d 956 (2d Cir. 1988); McCune v. City of Grand Rapids, 842 F.2d 903, 907 (6th Cir. 1988); Hampton v. Hanrahan, 600 F.2d 600 (7th Cir. 1979).]

14.  A supervisory officer may be held liable for a violation of the plaintiff's rights if his own conduct was a proximate cause of the violation.  A supervisory officer subjects a person to a violation of his or her constitutional rights if he (1) does an affirmative act, or (2) participates or acquiesces in another's affirmative act, or (3) omits to do something which he is required to do, and that act or omission causes the violation of which the plaintiff have complained.  Personal participation in the immediate act which violated the plaintiff's rights is not required.  It is sufficient if the supervisor sets in motion a series of acts by others, or knowingly refuses to terminate a series of acts by others, which he knows or reasonably should know would cause others to inflict the constitutional injury.  [Johnson v. Duffy, 588 F.2d 740 (9th Cir. 1978); McClelland v. Facteau, 610 F.2d 693 (10th Cir. 1979); Sims v. Adams, 537 F.2d 829 (5th Cir. 1976).]

15.  The plaintiffs also allege that the defendants recklessly or intentionally inflicted emotional distress upon them in violation of Connecticut law.  Under

Connecticut law, when a person engages in conduct which involves an unreasonable risk of causing emotional distress to another and that emotional distress is of a kind which, if caused, might adversely affect the plaintiff in a serious way, and the plaintiff actually has suffered such emotional injury, then the plaintiff is entitled to recover any damages which you determine are fair and just to compensate for the emotional distress which he or she has suffered.  It is not necessary for there to be any physical injury in order for the plaintiff to recover.  All that is necessary is that the conduct of the defendants have been outrageous, that it have been undertaken under such circumstances that a reasonable person would have known that it was likely to cause emotional distress, and that severe emotional distress actually has resulted.  If you find these facts to have been proven, then the defendant should be found liable to the plaintiffs for the reckless or intentional infliction of emotional distress under Connecticut state law.  [Appleton v. Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Buckam v. People Express, Inc., 205 Conn. 166, 173 (1987); Murray v. Bridgeport Hospital, 40 Conn.Sup. 56 (Conn.Super. 1984); Buckley v. Lovallo, 2 Conn. App. 579 (1984); Petyan v. Ellis, 200 Conn. 243 (1986).]

**(14)   ANTICIPATED EVIDENTIARY PROBLEMS**

　　None.

**(15)   PROPOSED FINDINGS AND CONCLUSIONS**

　　Not applicable.

**(16) TRIAL TIME**

Three days.

**(17) FURTHER PROCEEDINGS**

None.

**(18) ELECTION FOR TRIAL BY MAGISTRATE**

There is no agreement upon such an election.

                            THE PLAINTIFFS

BY:_____
       JOHN R. WILLIAMS (ct00215)
       51 Elm Street
       New Haven, CT 06510
       203/562-9931
       FAX:  203/776-9494
       E-Mail: jrw@johnrwilliams.com
       Their Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Attorney Jonathan H. Beamon, Assistant Corporation Counsel, 165 Church Street, 4th floor, New Haven, CT 06510.

_____
JOHN R. WILLIAMS